In the Interest of N.M. and
M.M., Minor Children,

M.M., Mother, Appellant.

No. 94–832.

Supreme Court of Iowa.

Feb. 22, 1995.

Michael T. Hines of McCarthy & Lammers, Davenport, for appellant.

Stephen W. Newport, Davenport, for appellee-father.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., Charles K. Phillips, Asst. Atty. Gen., and Gerda Lane, Asst. County Atty., for appellee-State.

Janice Roemer, Davenport, guardian ad litem for minor children.

Considered by McGIVERIN, C.J., and NEUMAN, SNELL, ANDREASEN, and TERNUS, JJ.

TERNUS, Justice.

Twin sons of M.M. and T.R. were adjudicated children in need of assistance. Shortly before this adjudication, the court had taken the children from their mother's custody and placed them with their paternal grandmother. Nine months after this placement the court transferred temporary custody to the father. After the children had been out of their mother's custody for seventeen months, the court entered a permanency order granting permanent custody to the father.

The mother appeals on three grounds. First she argues that the permanency hearing was invalid because it was scheduled on the court's own motion. Second she contends that the court could not enter a permanency order because the children had not been in foster care for twelve months. Third she asserts that she should have been granted sole custody or at least joint custody. We find no merit in any of the mother's arguments and therefore affirm.

I. *Background Facts and Proceedings.*

The twin boys who are the subjects of this proceeding were born in September 1990. Their parents, M.M. (Marcy) and T.R. (Tony), were not married.[1] The children lived with Marcy.

In March 1992, the state filed a child in need of assistance (CINA) petition alleging

---

1. We have not used the parties' real names.

that the twins were being denied critical care. At that time Marcy and the children lived with Marcy's mother. The family was provided family preservation services, family centered services and visiting nurse/homemaker services.

In the summer of 1992, Marcy had a fight with her mother and moved out of the house. She left her children in her mother's care. Marcy's mother cared for the children through October. Marcy then requested that the children be placed with their paternal grandmother.

In November 1992 the juvenile court issued a temporary order placing custody of the twins with their paternal grandmother under the supervision of the Department of Human Services (DHS). At this time, the children's father, Tony, was living in his mother's home.

In December 1992 the court adjudicated the twins children in need of assistance pursuant to Iowa Code sections 232.2(6)(c)(2) and 232.2(6)(g). *See* Iowa Code §§ 232.2(6)(c)(2) (failure of child's parent to exercise a reasonable degree of care in supervising child), .2(6)(g) (failure to supply child with adequate food, clothing and shelter and refusal of other means available to provide these essentials). The juvenile court found that the mother and maternal grandmother had failed "to provide essential and fundamental nurturance, discipline and structure for the children resulting in dramatic undersocialization and developmental delays." The children continued in the custody of their paternal grandmother.

After dispositional hearings in March and July of 1993, the court found that the children should temporarily be placed in their father's custody under DHS supervision. Transfer of custody took place in July 1993. At a contested March 1994 review hearing, the court decided on its own initiative to schedule a permanency hearing in April. After the April permanency hearing the court dismissed the CINA petition and placed the children in the permanent custody of their father. Marcy was granted visitation rights. She appealed.

## II. *Standard of Review.*

Appellate review of a permanency hearing is de novo. *In re A.M.H.*, 516 N.W.2d 867, 870 (Iowa 1994). Weight should be given to the juvenile court's findings of fact, but this court is not bound by them. Iowa R.App.P. 14(f)(7). The best interests of the child control the court's decision. Iowa R.App.P. 14(f)(15). There is a rebuttable presumption that the child's best interests are served by parental custody. *In re R.F.*, 471 N.W.2d 821, 824 (Iowa 1991).

## III. *Permanency Hearing.*

Marcy argues that the permanency hearing was not a valid proceeding under Iowa Code section 232.103 because the court impermissibly initiated the hearing. This contention lacks merit. Section 232.103 provides for the termination, modification, vacation and substitution of dispositional orders. Permanency hearings are controlled by Iowa Code section 232.104. Thus, section 232.104 governs this issue, not section 232.103.

Section 232.104 expressly states that if a child has been in foster care for twelve months, "the court shall, *on its own motion*, or upon application of any interested party ..., hold a hearing to consider the issue of the establishment of permanency for the child." Iowa Code § 232.104 (1993) (emphasis added). Thus, the court properly scheduled a permanency hearing once it determined that the children had been in foster care for twelve months. That brings us to Marcy's second challenge to the juvenile court's order—were the children in foster care for twelve months.

## IV. *Foster Care Requirement.*

As noted above, the court must hold a permanency hearing when "a child has been placed in foster care for a period of twelve months." *Id.* § 232.104. Marcy claims that this prerequisite was not met here because the children's placement with their paternal grandmother was not a placement in foster care. Her second argument is that even if foster care includes placements with relatives, foster care contemplates a change in custody. She contends that Tony already

had custodial rights when the court transferred custody to him so there was no change in custody and therefore no "foster care" placement at that time.

We disagree with the mother's interpretation of section 232.104 because we think the legislature intended the term "foster care" to encompass any out-of-home placement. The reasons for our conclusion follow.

■ Chapter 232 does not define the term "foster care." Although Iowa Code chapter 237, Child Foster Care Facilities, defines "*child* foster care" for purposes of that chapter, it contains no definition of "foster care." *See* Iowa Code § 237.1(4) (1993) (excluding care provided by relatives and guardians from the definition of "child foster care"). We do not find the definition of "child foster care" illuminating on the issue before us. The goal of chapter 237 varies significantly from the goals of chapter 232. A narrow definition of "child foster care" which excludes relative-provided care is understandable in chapter 237 because the purpose of chapter 237 is to regulate the care provided to children who are not in the homes of parents, relatives or guardians. *See id.* § 237.2. In contrast, as we discuss later, a broad definition of "foster care" is most consistent with the goals of chapter 232 to provide for the child's welfare and promote placement with parents or relatives.

■ Finding no statutory definition of "foster care," we look to rules of statutory construction for guidance in defining this term. One relevant rule is that we consider the goals of the statute and the consequences of a particular construction. *The Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Texaco Refining & Mktg., Inc.*, 526 N.W.2d 531, 536 (Iowa 1995); Iowa Code § 4.6 (1993). The ultimate goal of chapter 232 is to "best serve the child's welfare." Iowa Code § 232.1 (1993); *In re J.R.H.*, 358 N.W.2d 311, 317 (Iowa 1984). Additionally, the purpose of section 232.104 is to allow "a secure and permanent placement" when the court decides that is what the child needs. *See* Iowa Code § 232.104 (1993). If we interpret "foster care" to include only nonrelative placements, a child who lives with relatives for twelve months or longer is ineli-

gible for a permanency order even though a permanent placement may be in that child's best interest. Such a consequence does not promote the child's welfare.

■ Another adverse consequence of interpreting section 232.104 as not applying to children placed in the home of a relative is that of encouraging nonrelative placements. Iowa Code section 232.99 requires the court to make "the least restrictive disposition appropriate considering all the circumstances." The home of a relative is considered less restrictive than placement in a private agency, facility or institution or placement with the department of human services. *Id.* §§ 232.99(3), .102(1). Thus, chapter 232 favors relative placements over nonrelative placements. Yet if children placed with relatives would not be eligible for an order establishing a permanent placement, the court would be forced to remove a child from a suitable relative placement for twelve months in order to issue an order establishing permanency. Such a result is irreconcilable with the goals of chapter 232 to act in the best interest of the child and to favor relative placements.

■ A review of the prior language used in section 232.104 provides further support for our interpretation of that statute. *See id.* § 4.6 (in determining the intent of the legislature, court may consider legislative history and former statutory provisions). In its original form, section 232.104(1) read "If *custody* of a child *has been transferred for placement pursuant to section 232.102* for a period of twelve months...." 1987 Iowa Acts ch. 159, § 4 (emphasis added). In 1989 the statute was amended to its current language—"If a child has been placed in foster care for a period of twelve months...." 1989 Iowa Acts ch. 229, § 6. The 1989 amendment did two things. First, it eliminated the requirement that there be a prior transfer of custody. Second, it removed the limitation to placements made under section 232.102. We think the legislature intended these changes to broaden the cases in which a court could establish permanency for a child.

The original version of section 232.104(1) applied only to placements made under section 232.102. Section 232.102 allows the court to transfer custody to a relative or other suitable person, a private agency, facility or institution, or DHS. Iowa Code § 232.102 (1993). However, not all children removed from their home are placed pursuant to section 232.102. Iowa Code section 232.101 also allows the court to place a child with a parent who has legal custody but did not previously have physical custody of the child. In re J.R.H., 358 N.W.2d at 319. Before the 1989 amendment to section 232.104, a child taken from the home of one parent and placed in the home of the other parent pursuant to section 232.101 would not be eligible for a permanency hearing. By removing the references to section 232.102 and to a transfer of custody, the amendment to section 232.104 broadened the cases in which the court could establish permanency to include children placed with a custodial parent pursuant to section 232.101. To conclude that section 232.104 does not encompass parental and other relative placements would make the 1989 amendment meaningless.

This broad interpretation of the term "foster care" is also consistent with the meaning given to that term by our appellate courts. We presume the legislature knows the meaning given to a particular term by the courts when it uses that term in a statute. The Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd., 526 N.W.2d at 536. Therefore, our usage of the phrase in prior cases is relevant to our analysis.

A review of our case law shows that we have never expressly defined the term "foster care." However, Iowa appellate courts have implied that foster care is not limited to homes of nonrelated caretakers by using phrases such as "placement in permanent foster care with O.H., the maternal grandmother," In re L.S., 483 N.W.2d 836, 837

(Iowa 1992), "place Joshua in foster care with [his uncle and aunt]," In re Mann, 293 N.W.2d 185, 187 (Iowa 1980), and "placed in non-relative foster care," In re D.B., 483 N.W.2d 344, 345 (Iowa Ct.App.1992).

Finally we note that the California Supreme Court, faced with a situation similar to the one here, concluded that the term "foster home" included placement with relatives. In re Laura F., 33 Cal.3d 826, 191 Cal.Rptr. 464, 662 P.2d 922 (1983) (en banc). In that case, the California court considered whether a child who was placed with her aunt and uncle for over two years had met the statutory requirement of spending two or more years in "one or more foster homes." Id. at 466, 662 P.2d at 924. The court concluded that a narrow definition of "foster homes" was not consistent with the statute's purpose of serving the welfare and best interest of a child. Id. at 467, 662 P.2d at 925. Consequently, the court held that "foster homes" included placement with relatives. Id.

In summary, we conclude that interpreting "foster care" to include a relative placement most effectively accomplishes the goals of chapter 232 to promote the best interests of the child, to encourage relative placements, and to establish a secure and permanent placement within a reasonable time. This definition of "foster care" is also most consistent with our prior usage of that term. Therefore, we hold that the term "foster care" as used in section 232.104 includes out-of-home placements with relatives, including parents who did not have physical custody at the time the CINA petition was filed.[2]

Applying this definition, we hold that the placement of Marcy's sons with their paternal grandmother and father for over one year falls within the statutory prerequisite of placement "in foster care for twelve months." Thus, the juvenile court did not err in conducting a permanency hearing.

2. We need not decide whether Tony had a legal right to custody of the twins prior to the court order transferring custody to him because that fact would not change our decision. Whether the children were placed with Tony pursuant to section 232.101 (retention of custody by parent having legal right to custody) or section 232.102 (transfer of custody to relative/parent without custodial rights) makes no difference because the permanency provisions of section 232.104 are equally applicable under either placement option.

### V. *Permanency Order Transferring Custody From Mother to Father.*

█ Marcy also challenges the court's decision to transfer custody of the twins from her to their father. Sole custody of a child may be transferred from one parent to another parent only upon convincing evidence that (1) a termination of the parent-child relationship would not be in the best interest of the child, (2) services were offered to the child's family to correct the situation that led to the child's removal, and (3) the child cannot be returned to the child's home. Iowa Code § 232.104(3) (1993). On appeal, Marcy contests only the court's finding that her sons cannot be returned to her.

█ Using Marcy's current performance as a predictor of future performance, we think there is convincing evidence that Marcy is unable to exercise a reasonable level of supervision and discipline necessary for the children's development. We also note with disapproval Marcy's use of the children as pawns in her stormy relationship with Tony. Rather than thinking first of the children's need for a stable and secure home, Marcy continues to use visitation as an opportunity to disrupt and undermine the children's relationship with Tony and Tony's family.

Upon our review of the record, we agree with the juvenile court that the children should be given a stable and permanent placement with their father. The court-appointed special advocate for the children, DHS and Lutheran Social Services all recommended continued placement with Tony. The record shows that Tony can discipline the children and provide a safe, stable and nurturing environment for them.

█ Marcy also argues in the alternative that the court should have granted joint custody. However, joint custody is unworkable here due to the inability of the parents to effectively communicate with one another. *In re Marriage of Miller,* 390 N.W.2d 596, 602 (Iowa 1986).

█ Finally, Marcy argues that the juvenile court should have granted increased visitation. Marcy works from 11:00 a.m. to 8:00 p.m. or 9:00 p.m. every day except Tuesday, Wednesday and Saturday. Under the current visitation schedule Marcy has the children every Saturday afternoon and every other week from 11:30 a.m. on Tuesday until Wednesday at 6:30 p.m. We approve this visitation based on Marcy's current work schedule.

AFFIRMED.