**IN THE COURT OF APPEALS OF IOWA**

No. 14-1672
Filed November 26, 2014

**IN THE INTEREST OF M.P. and C.P.,**
        **Minor Children,**

**K.P., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Susan Flaherty, Associate Juvenile Judge.


        A father appeals from the permanency order concerning his two children.
**AFFIRMED.**


        Ellen R. Ramsey-Kacena, Cedar Rapids, for appellant.

        Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, Jerry Vander Sanden, County Attorney, and Lance Heeren, Assistant County Attorney, for appellee.

        Ryan P. Tang of Law Office of Ryan P. Tang, P.C., Cedar Rapids, for mother.

        Julie Trachta of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor children.


        Considered by Mullins, P.J., and Bower and McDonald, JJ.

**MCDONALD, J.**

Kenneth, the father of C.P. and M.P., appeals from the permanency order continuing C.P. and M.P.'s placement in foster care with a goal of returning them to the custody of their mother, Patricia. He contends the State failed to make reasonable efforts to reunify him with his children, the court erred in continuing the children in foster care instead of placing them with him as the least-restrictive placement, and the court erred in refusing to modify the permanency goal to placement with him.

I.

C.P. and M.P. were removed from Kenneth and Patricia in February 2012 after Kenneth and Patricia left the children home with the children's two older half-siblings effectively unsupervised. At the time, the two older half-siblings, who have a different father than C.P. and M.P., were six and three years old. At the time, C.P. was two years old, and M.P. was seven months old. The two older half-siblings were placed with their biological father. C.P. and M.P. were adjudicated in need of assistance and placed in the custody of the Iowa Department of Human Services (IDHS) for placement in foster care. After a review hearing in August, there was an incident of domestic violence between Kenneth and Patricia, and they separated. A no-contact order was entered.

In December 2012, following a permanency hearing, the court approved IDHS's plan to reunify the children with a parent. Following a hearing, the court granted IDHS's request for a trial placement of the children with Patricia, with daily drop-in supervision for the first sixty days. The day following the hearing,

the service provider discovered Kenneth and another man hiding in a closet at Patricia's home. Patricia was not to have contact with Kenneth at that time. The children were again removed and placed in foster care. The State filed a petition to terminate Patricia and Kenneth's parental rights.

Despite the filing of the petition to terminate parental rights, Patricia continued to work toward reunification. Kenneth stopped attending visitation and did not keep in regular contact with IDHS for a period of several months. By the time of the termination hearing in August 2013, IDHS no longer supported termination but asked the court to approve a trial placement with Patricia. Kenneth had moved approximately 120 miles away and was living with his married paramour and her children despite remaining married to Patricia. Kenneth's paramour and her children were receiving services from IDHS arising from two founded child abuse assessments.

The trial placement with Patricia was not without incident, but IDHS continued to recommend extending the placement. In January 2014, the children's custody was returned to Patricia. But that would prove to be short-lived. In March 2014, while C.P. and M.P.'s two older half-siblings were visiting Patricia, the youngest child put a fork in a space heater and burned the other children by touching them with the hot fork. Patricia was not effectively supervising the children—she was asleep when this incident occurred. Because of this incident, C.P. and M.P. were again removed from Patricia's care and placed in foster care.

During the time of the trial placement with Patricia, Kenneth had resumed contact with IDHS and with the children. Kenneth regularly exercised visitation until January 2014. At that time, he again ceased regular contact with IDHS and with the children, exercising only one visitation until April 2014. Once visitation regularly resumed, it progressed from supervised visitation in May, to unsupervised visitation in July, to weekend visitation from Friday noon to Monday morning. The trial testimony showed Kenneth cares for his children and is strongly bonded with them. The trial testimony also showed the children care for and are bonded with Kenneth.

Following a permanency hearing in July and August, the court continued the children in foster care "while the plan to place them in their mother's primary care continues to move forward." The court expressed "concern regarding the ability of either [parent] to separately provide permanent, consistent, safe care and supervision for these children throughout the rest of their childhoods," but noted IDHS, the guardian ad litem, and Patricia all supported IDHS's recommendations for returning the children to Patricia's primary care. The court concluded:

> In determining the permanent option which is in [the children's] best interest, the Court has considered each parent as a potential primary placement. Tricia has shown more consistency and a clearer commitment to providing the stability and consistency [the children] require. While Ken has made some progress, his progress has been less consistent than Tricia's and comes with heavy reliance on others to actually meet the children's needs. Ken's mental health, impaired decision making and cognitive limitations make it extremely unlikely that he could maintain these children in his sole care on a full-time permanent basis without the children continuing to be adjudicated children in need of assistance and without ongoing services and supervision through the child

welfare system. While the Court continues to have significant concerns regarding Tricia's ability to maintain her focus on her children and their needs, there has been sufficient progress on Tricia's part to support continued efforts to place the children in her primary care. The children have developed a strong bond with their mother. Additionally, placement with Tricia allows the [children] a better opportunity to maintain strong bonds with their brothers. It allows them to maintain relationships with their current therapists and other supports and community connections.

Therefore, in assessing the primary placement and permanency goal in [the children's] best interest, the Court concludes that a plan for primary placement with their mother best meets the children's need for safety, security and stability, in addition to providing them with a nurturing, loving environment.

## II.

We review a permanency order de novo. *See In re K.C.*, 660 N.W.2d 29, 32 (Iowa 2003). We review both the facts and the law and adjudicate rights anew. *See In re H.G.*, 601 N.W.2d 84, 85 (Iowa 1999). Although we give weight to the juvenile court's findings of fact, we are not bound by them. *See In re N.M.*, 528 N.W.2d 94, 96 (Iowa 1995). There is a rebuttable presumption that the children's best interests are served by parental custody. *Id.* The best interests of the children are paramount to our decision. *Id.*

## III.

## A.

Kenneth contends IDHS failed to make reasonable efforts to prevent removal by failing to place the children with him to proceed to a trial home placement "despite several months of successful extended overnight visits." He argues the reasonable efforts mandate is "to return the child to the child's home as quickly as possible consistent with the best interests of the child." Iowa Code § 232.102(7) (2011). He asserts he has been "stymied at extended overnight

visitation for multiple months, despite no issues or safety concerns." He believes the children should have been placed with him upon their removal from Patricia's home in April.

The permanency-plan goal was to return the children to Patricia's care. The reasonable efforts to return the children home were directed toward Patricia's home. To place the children full-time with Kenneth would have forced them to break relationships with their therapists and other community supports. It would have made keeping a strong bond with their brothers much more difficult. The efforts made to foster the children's relationship with Kenneth were reasonable under the circumstances.

### B.

Kenneth contends the court erred in continuing the children temporarily in foster care instead of placing them with him as the least-restrictive placement. When IDHS removed the children from Patricia's care in April 2014, it sought modification of the dispositional order. The court set that issue for hearing in July with the permanency hearing. At the time of removal, Kenneth had only one visit with the children in a three-month period. His circumstances were largely unknown. Under these circumstances, the least-restrictive placement available to the court was placement that did not require relocating the children a great distance, breaking their relationships with their therapists, damaging their strong bond with their brothers, or straining the strong bond they had with Patricia. *See* Iowa Code § 232.99(4) ("[T]he court shall make the least restrictive disposition appropriate *considering all the circumstances of the case.*" (emphasis added)).

C.

Kenneth also contends the court erred in failing to modify the permanency goal to placement with him. The party seeking modification of a permanency order must show a substantial and material change in circumstances such that modification is in the best interest of the child. *In re D.S.*, 563 N.W.2d 12, 15 (Iowa Ct. App. 1997); *In re T.C.*, No. 14-1048, 2014 WL 4930652, at *1 (Iowa Ct. App. Oct. 1, 2014). We conclude the court did not err.

The limited visits with Kenneth went well, but, as the juvenile court found, Kenneth's health, mental health, impaired decision making, and cognitive limitations make it extremely unlikely he could maintain these children in his sole care on a full-time permanent basis. Kenneth suffers from epilepsy, ADHD, depressive disorder, personality disorder, and bipolar disorder. Kenneth commented he was exhausted after having the children for a weekend and needed to sleep for three days after having visits with the children. Kenneth has no long-term plan to provide for the children. He is unemployed and not searching for work. He depends entirely on others for transportation for himself and the children. He is dependent upon FIP payments, food assistance, and donations to provide for the children. He is also dependent upon his paramour for housing and support. While poverty, alone, is not grounds for determining permanency, the best interests of the children require a determination of whether the parent can meet the children's basic needs. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010) (noting the court looks at placement that best meets the physical, mental, and emotional needs of the child). Further, as set forth above, Kenneth

failed to provide support for the children or have consistent contact with them. On at least two occasions during the pendency of this proceeding, Kenneth disappeared for months at a time, ceasing contact with IDHS and the children.

Over the course of this proceeding, Patricia has made more consistent progress than Kenneth. Patricia has demonstrated a greater commitment to the children and a greater ability to provide them with safety, stability, and consistency. Placement with Patricia also would allow the children to maintain their current therapeutic relationships, their relationship with their brothers, and C.P.'s individualized education plan. On our review of the record, we agree with the juvenile court's conclusion the permanency goal should remain returning the children to Patricia's physical care. *See, e.g.*, *In re C.E.*, No. 11-0897, 2011 WL 4953000, at *3 (Iowa Ct. App. Oct. 19, 2011) (affirming permanency review order continuing placement with one parent where change would require school change, daycare change, and less contact with friends and family).

IV.

The record demonstrates that both parents care for these children and that the children care for both parents. As the juvenile court noted, upon return of the children to this family and, hopefully, the closure of this case, there may be ongoing custody litigation in the district court. On the limited questions presented in this appeal, for the foregoing reasons, we affirm the juvenile court's permanency order.

**AFFIRMED.**