# IN THE COURT OF APPEALS OF IOWA

No. 17-0406
Filed May 17, 2017

**IN THE INTEREST OF L.K.,**
**Minor Child,**

**S.S., Mother,**
    Appellant,

**K.K., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

A mother and father appeal orders transferring their child from relatives to non-relative foster care. The mother also appeals the court's denial of a motion to intervene filed by the relatives. **REVERSED AND REMANDED ON BOTH APPEALS.**

Seth J. Harrington of Harrington Law L.C., Clive, for appellant mother.

Nicholas J. Einwalter, Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Kimberly S. Ayotte of Youth Law Center, Des Moines, guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

A mother and father appeal juvenile court orders transferring their child from relatives to non-relative foster care. The mother also appeals the court's denial of the relatives' motion to intervene in the child-in-need-of-assistance proceedings.

## I. *Background Facts and Proceedings*

A child, born in November 2016, tested positive for methamphetamine and morphine. The child's mother admitted to using both drugs during her pregnancy. The father, who was on probation for a drug crime, tested positive for methamphetamine.

The parents signed a safety plan proffered by the department of human services (DHS). They agreed the child would be discharged to her paternal aunt and uncle. They further agreed their contact with the child would be "supervised by [the relatives] or another approved family member." Under the heading, "How plan is monitored," the document stated the relatives would "communicate with DHS about cooperation with safety plan and any concerns." The parents consented to—and the juvenile court ordered—the temporary removal of the child from their custody.

An adjudication hearing scheduled for a Wednesday was postponed for six days. The postponement order stated, "Before the next hearing the following shall be completed: . . . Current custodians and adults residing in the home shall provide a drug screen today." The order was not served on the current custodians and relatives in the home.

At the rescheduled adjudication hearing, the State requested "placement continue provided that a clean drug screen is provided." The State informed the court that the relatives underwent urine tests the night before but the results were not back. Without holding an evidentiary hearing, the juvenile court deemed the relatives' failure to obtain drug screens the previous Wednesday to be "missed drug screens" and, therefore, "positive drug screens." Based on this premise, the court stated, "[W]e need to figure out a different placement." The court questioned the attorneys about the extent of visitation that had occurred between the parents and child and, in light of discrepancies in their statements, found the relatives had been "dishonest with the department of human services regarding the parents' contact with this child." The court ordered the child transferred from the relatives to non-relative foster care. At this point, the child had been with her aunt and uncle for sixty-five days.

The relatives moved to intervene and to modify the placement. The juvenile court denied the intervention motion on the ground that "the intervenors' rights [were] being adequately represented" and it was "not in the child's best interest because these custodians have demonstrated an unwilling[ness] or inability to abide by the Court's directives and have not been forthcoming regarding the contact with the parents as reported by the parents." With respect to the modification motion, the court held an evidentiary hearing, at which the aunt and department social worker testified. The court concluded it was "not in the child's best interest to be placed in [the relatives'] custody any longer" because they lacked "capacity to protect this child from the parents' ongoing substance abuse issues."

As noted, both parents appealed. We find it unnecessary to address the mother's challenge to the intervention ruling because our resolution of the parents' challenge to the court's transfer decision is dispositive.

## II. Child Placement

"When the dispositional hearing is concluded the court shall make the least restrictive disposition appropriate considering all the circumstances of the case." Iowa Code § 232.99(4) (2016). "The home of a relative is considered less restrictive than placement in a private agency, facility or institution or placement with the department of human services." *In re N.M.*, 528 N.W.2d 94, 97 (Iowa 1995) (citing Iowa Code §§ 232.99(3), .102(1)). "Thus, chapter 232 favors relative placements over nonrelative placements." *Id.*

The juvenile court did not honor this preference in favor of relatives. On our de novo review, we disagree with the transfer decision.

As discussed, the court order requiring the relatives to undergo the drug tests was filed six days before the adjudication hearing and was not served on the relatives. Notwithstanding the absence of formal notification, the relatives complied with the order on the day before the hearing. The following morning— just six days after the court entered the order requiring drug testing—the juvenile court transferred the child out of the relatives' care. Later the same day, the department received the aunt and uncle's negative test results for all illegal substances. An adult daughter living in the home also tested negative for illegal substances.

At the subsequent evidentiary hearing, the department social worker assigned to the case testified the department placed the child with her aunt and

uncle "[b]ecause we always try to keep our kids with relatives." She visited the home of these relatives and expressed no concerns.

With respect to the drug-testing order, the social worker testified to advising the parents about the urgency of having the relatives comply "within the next 24 hours." There is no indication she directly informed the relatives of such a deadline. A report the social worker authored stated only that she called the relatives on the day the order was entered and "left a specific message . . . as to directions to do the drug test."

The child's aunt essentially confirmed that this was the sum and substance of the telephone message. She testified she was at a doctor's appointment for the child on the day the order was entered and the message she received did not contain a deadline for complying. In the aunt's words, the department employee "didn't give me a date, time frame or [tell me] I have to do . . . this before the court date." The aunt "thought we can go do it any time" and, because her family was "clean," she had no understanding the test result was "going to be used for this court . . . ." The aunt contacted the department social worker two days after receiving the message to obtain clarification. She was unable to reach the social worker and left a message. The worker returned the call three days later. The aunt and uncle underwent testing that day. The social worker did not dispute that she was unavailable when the relatives called her, admitted the aunt and uncle submitted to drug tests on the day before the rescheduled adjudication hearing, and admitted the test results were negative for any illegal substances. We conclude the relatives' failure to obtain the drug test on the day the court ordered it was not grounds to transfer placement.

The juvenile court also relied on the relatives' "dishonesty" with respect to visits. But under the safety plan approved by the department at the time the child was placed in their care, the relatives were the individuals designated to supervise visits. Later, the aunt was told that if the parents wished to visit the child, they needed to contact the service provider assigned to the case. According to the aunt, the parents attempted to do so, but the service provider never responded.

Although there was some difference of opinion about who was responsible for the lack of communication between the parents and service provider, the child's attorney essentially confirmed that the relatives stood in as supervisors simply because no one else stepped forward. At the adjudication hearing, she stated "[v]isits have been supervised by the relative placement, but there have not been any [service provider]-supervised visits because the [service] provider hasn't been able to get ahold of the parents." The department social worker agreed, stating, "[M]y understanding was that it was approved for [the parents] to be coming—going over to the placement and seeing the child there."

In sum, we discern no dishonesty on the relatives' part with respect to parental visits. At worst, the aunt and uncle received mixed signals as to who was to supervise visits and they filled the void by conducting the supervision themselves. The department was well aware they were providing supervision and, indeed, authorized them to do so at the outset. The record contains no evidence that they failed to provide adequate supervision. We conclude the manner in which visits were conducted was not a basis for transferring placement from the relatives to non-relative foster care.

On a related matter, the court found the relatives struggled "to set appropriate boundaries." The issue arose because the relatives went out of their way to facilitate visits between the parents and child. We see their actions as a positive rather than a negative factor in light of the department's authorization of visits. Again, there is no evidence that the relatives jeopardized the health or safety of the child by facilitating visits at the convenience of the parents.

Finally, the court suggested a transfer was appropriate because the relatives did not recognize the risk posed by the parents. To the contrary, the aunt testified she understood precisely why the child was removed from the mother's care and stated she would be able to recognize if someone was under the influence. She expressed a willingness to abide by any restrictions on parental contact recommended by the department.

We conclude the child's paternal aunt and uncle were the least restrictive placement. Accordingly, we "reverse and remand so the juvenile court can order a custody arrangement in the best interests of the child[] considering [the aunt and uncle] as the least restrictive placements." *In re K.P.*, No. 11-1869, 2012 WL 2122227, at *9 (Iowa Ct. App. June 13, 2012).

**REVERSED AND REMANDED ON BOTH APPEALS.**