# IN THE COURT OF APPEALS OF IOWA

No. 18-1000
Filed August 1, 2018

**IN THE INTEREST OF M.W.,**
**Minor Child,**

**S.S., Father,**
    Appellant.
_____

    Appeal from the Iowa District Court for Jasper County, Steven J. Holwerda, District Associate Judge.

    A father appeals a permanency order transferring guardianship and custody of his child to her maternal aunt. **AFFIRMED.**

    Christopher A. Clausen of Clausen Law Office, Ames, for appellant father.

    Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

    Jane K. Odland of Odland Law Firm, PLLC, Newton, guardian ad litem for minor child.

    Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

A father appeals a permanency order transferring guardianship and custody of his child to her maternal aunt. He contends (1) the child should have been placed with him during the child-in-need-of-assistance proceedings and (2) the district court erred in ordering a guardianship with the aunt. We will address the interrelated contentions together.

Our de novo review of the record reveals the following facts. The child was born in 2004. Prior to the initiation of these proceedings, the mother had custody and physical care of the child and the father exercised visitation on alternating weekends.

When the child was eleven years old, the State filed a child-in-need-of-assistance petition alleging the mother was "using methamphetamine and selling methamphetamine in the home where the [child] reside[s]." The mother stipulated to having the child adjudicated in need of assistance. The district court adjudicated the child and granted the mother temporary legal custody, subject to the supervision of the department of human services. The father continued to exercise alternating-weekend visitation with the child.

In time, the mother tested positive for methamphetamine. The State applied to have the child removed from her care. The district court granted the application, and the child was placed with her maternal aunt. Following a hearing, the court confirmed the out-of-home placement.

Two months later, the department recommended the child's return to the mother, under its protective supervision. At the same time, the father requested custody of the child. The district court found that the father never had custody of

the child, the mother had always been the child's primary caregiver, the mother was undergoing inpatient substance-abuse treatment, and the mother was "now in a position where the child [could] be returned to her care . . . safely." The court ordered temporary custody transferred to the mother, under the department's protective supervision.

Less than a month later, the mother was unsuccessfully discharged from the substance-abuse treatment center due to aggressive behaviors. The department again applied to have the child removed from her care. The district court granted the application and the child was returned to the home of her maternal aunt.

Meanwhile, the father continued to exercise visitation with the child. The department agreed to a plan that would transition her to her father's care and custody. Under the plan, the father's visits were to increase to a Thursday through Monday alternating-week schedule and, after approximately a month, the father would have a week-long visit with the child.

According to the department social worker assigned to the case, the father "did not follow that visitation plan." On the first day of the week-long visit, he informed the department he would be unable to have the child for the entire week because he had to help his grandmother. He saw the child for twenty minutes, then returned her to her aunt. He acknowledged that cutting the week-long visit down to twenty minutes probably "shook" up his daughter "a little bit."

Despite this significant setback, the department continued to schedule visits for the father. The father declined all but one of them. He also did not telephone

the child at the maternal aunt's home, even though she had the same phone number for twelve or thirteen years.

The father was also expected to engage in family therapy with the child. The father kept three appointments. He ended his participation two weeks before his scheduled one-week visit with the child.

The final straw was the father's refusal to take a drug test following the scheduled one-week visit. He acknowledged arriving at the testing site[1] but said he refused the test after learning the center planned to sample a hair follicle rather than his urine. He did not explain why the use of this type of test whould affect his compliance. The father declined to change his mind about undergoing the drug test after being informed the department would reduce his visits to two supervised hours per week if he failed to comply.

The department social worker recommended against placing the child with her father "because [the father] has not followed through with the different plans that we have made to work on reunification with him." She testified, "[I]f he had followed through with visitation and with drug testing and with therapy with him and [the child,] the recommendation would be different." She agreed the father was "very close" to having the child placed in his care and custody, but he "blew it." She recommended permanent placement with the child's maternal aunt.

---

[1] The father complained about the distance to the testing site and his lack of transportation. The department caseworker noted he received transportation assistance to make the trips.

Iowa Code chapter 232 (2017) "favors relative placements over nonrelative placements" during child-in-need-of-assistance proceedings. *In re N.M.*, 528 N.W.2d 94, 97 (Iowa 1995); *see also In re R.B.*, 832 N.W.2d 375, 381 (Iowa Ct. App. 2013). The chapter identifies a spectrum of least restrictive to most restrictive placements. *See* Iowa Code § 232.99(4). Iowa Code section 232.102(1)(a)(1) authorizes the transfer of a child's custody to "[a] parent who does not have physical care of the child, other relative, or other suitable person."

In denying the father's request for custody of the child, the district court reasoned:

> The Court does not know the real reason for the father's non-compliance. But, whatever the cause and whatever the reason, when given the opportunity to have the child transitioned into his care, the father has not shown the effort or the ability or the willingness to do what it takes to have the child in his care. He has shown a complete and utter lack of effort, lack of compliance, and lack of cooperation with the transition plan. The plan was simple: take drug test when requested, exercise visits, participate in Family Therapy. He has done none of those and, at the Permanency Hearing, showed no remorse for his non-compliance, only defiance and seeming indifference.

We concur in this reasoning. The district court approved a plan to effectuate a transfer of custody to the child's father. Through no fault of anyone but the father, the plan did not succeed. We affirm the district court's refusal to transfer the child to the father's custody during the proceedings as well as the court's transfer of guardianship and custody to the maternal aunt following the permanency hearing.

**AFFIRMED.**