# IN THE COURT OF APPEALS OF IOWA

No. 19-1410
Filed November 27, 2019

**IN THE INTEREST OF R.Q.,**
**Minor Child,**

**R.J., Father,**
　　Appellant.

_____

Appeal from the Iowa District Court for Polk County, Colin J. Witt, District Associate Judge.

A father appeals the juvenile court order terminating his parental rights. **AFFIRMED.**

Marcy Lundberg of Lundberg Law Firm, Indianola, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

ConGarry D. Williams of Juvenile Public Defender Office, Des Moines, attorney and guardian ad litem for minor child.

Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**SCHUMACHER, Judge.**

A father appeals the juvenile court order terminating his parental rights. We find the court properly determined in the permanency order the child should remain in foster care with his half-sibling rather than moving to the home of the father's cousin. We find termination of the father's parental rights is in the child's best interests and none of the exceptions to termination should be applied. We affirm the decision of the juvenile court.

## I.        Background Facts & Proceedings

R.J., father, and S.T., mother, are the parents of R.Q., born in 2018.[1] The parents have experienced problems with mental health and drug addiction, in addition to concerns with criminal behavior. The child was removed from the parents' care on July 20, 2018, as both of the parents were in prison on drug-related charges and were unable to care for the child. The child was placed in foster care with A.A. and D.A., who had adopted one of R.Q.'s half-siblings on the mother's side.

A combined child in need of assistance (CINA) adjudication and dispositional order was filed on November 23, 2018. The child was adjudicated CINA pursuant to Iowa Code section 232.2(6)(c)(2) and (n) (2018). The court ruled the temporary legal custody and guardianship of the child was with the Iowa Department of Human Services (DHS) "for purposes of family foster care." The child continued in the care of A.A. and D.A.

---

[1] The father's rights to another child were terminated, while the mother's rights to five other children have been terminated.

In a February 25, 2019 order, the court changed the permanency goal from reunification to termination of parental rights. The court stated, "It is fairly anticipated that both parents will be incarcerated for the next decade or more." The father asked to have the child placed with his cousin, S.K. The court found S.K. would be "an excellent relative placement option," but determined it would be in the child's best interests to keep him in his current placement with a half-sibling. The father filed a motion to reconsider under Iowa Rule of Civil Procedure 1.904(2). The court denied the request to change the placement of the child.

On March 26, the State filed a petition seeking to terminate the parents' rights. The father was in federal prison and participated by telephone in the termination hearing. He testified he expected to remain in prison until 2031. The father admitted he could not have the child returned to his care at the time of the hearing. He again asked to have the child placed with S.K. S.K. appeared at the hearing and asked to have the child placed in her care. She stated she was willing to have the child stay in contact with his current foster family, including his half-sibling.

The juvenile court terminated the parents' rights under section 232.116(1)(j) (2019), finding, "Both parents are imprisoned and it is unlikely the parents will be released from prison for five years or more." The court found termination was in the child's best interests. The court stated, "This allows young [R.Q.] to stay in the only home he has ever known. This allows for young [R.Q.] to be with his biological sibling. This meets [R.Q.'s] needs for safety and stability and permanency." The

court determined none of the exceptions to termination should be applied. The father appeals.[2]

## II. Standard of Review

Our review of termination proceedings is de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). "'Clear and convincing evidence' means there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) (citation omitted). Our primary concern is the best interests of the child. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014).

## III. Placement of Child

The father claims the juvenile court should have placed the child with his cousin, S.K., at the time of the permanency hearing, rather than keeping the child in foster care. He states it would be better for the child to be placed in a family with biological connections to him. He contends relatives should be given priority in placement decisions.

Prior to the termination of parental rights, "chapter 232 favors relative placements over nonrelative placements."[3] *In re N.M.*, 528 N.W.2d 94, 97 (Iowa 1995). Also, DHS should strive to maintain sibling relationships, unless there is clear and convincing evidence the relationship would be detrimental to the child. *In re A.J.,* No. 13-0216, 2013 WL 1227360, at *3 (Iowa Ct. App. Mar. 27, 2013)

---

[2] The mother has not appealed the termination of her parental rights.

[3] After a parent's rights have been terminated "there is no statutory preference for placement with a relative." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018). Additionally, after termination of a parent's rights, the parent no longer has standing to challenge actions by the juvenile court, including placement of the child. *See In re M.N.W.*, 577 N.W.2d 874, 875–76 (Iowa Ct. App. 1998).

(citing Iowa Code § 232.108(1), (4)). In determining a placement for a child, our primary concern is the best interests of the child. *See J.S.*, 846 N.W.2d at 40.

The State cites to *In re L.B.*, No. 18-1165, 2018 WL 4361066, at *2 (Iowa Ct. App. Sept. 12, 2018), which provides:

> Once the juvenile court selected IDHS to serve as the child's custodian, it was not the juvenile court's place to select the particular physical placement of the child. Instead, IDHS, as legal custodian of the child, was vested with the authority to select the particular foster care placement subject to the juvenile court's review. *See* Iowa Code § 232.2(11)(b)(1) (providing the custodian has the right to "maintain or transfer to another the physical possession of that child").

In the joint adjudication and dispositional order the court placed temporary legal custody and guardianship of the child with DHS "for purposes of family foster care." DHS continued entrusting the care of the child to A.A. and D.A., with whom the child had been placed upon removal from the parents' care on July 20, 2018. In November 2018, S.K. indicated to DHS she was interested in having the child placed in her care. S.K.'s mother has custody of the child's half-sibling on the father's side and S.K. testified, "I go to my mother's a lot."

In the permanency order filed on February 25, 2019, the juvenile court stated:

> The Court accepts that [S.K.] appears to be an excellent relative placement option. The record is that both biological parents would like [S.K.] to be the custodian of the child, it is unclear whether they would prefer that under a guardianship or via termination/adoption.
> The child . . . is 7 months old. He is placed with a biological sibling. He has formed attachments in the home where he has been placed since his birth.
> Both homes provide some relative connections. [S.K.]'s home clearly provides more relative connections for this child. However, the only home this child has known over his seven months of life also provides an important biological sibling connection. It is this later

concern that sways the undersigned that it is in this child's best interest not to disrupt his placement and that is in his short term and long term best interest for his emotional health and well being. This decision is by the slimmest of margins, as the Court noted on the record that both homes appear to be able to provide this child with unconditional love and supports and desire to be his permanent placement.

In the termination order, the court again noted the home of A.A. and D.A. was the only home the child had ever known.

We conclude the juvenile court acted in the child's best interests by determining the child should remain in the home of A.A. and D.A., rather than being moved to the home of S.K. While S.K. is the father's cousin, she did not express an interest in having the child placed in her care until November 2018, when the child had already begun to build relationships with A.A. and D.A. and with the child's half-sibling who was in their care. S.K.'s mother has custody of another of the child's half-siblings, but that child does not live in the same home as S.K. We agree with the juvenile court's conclusion the child should remain in "the only home this child has known over his seven months of life [and which] also provides an important biological sibling connection."

## IV. Best Interests

The father claims termination of his parental rights is not in the child's best interests. He states, "Courts are not free to take children from parents simply by deciding another home offers more advantages," citing *In re C. & K.*, 322 N.W.2d 76, 81 (Iowa 1982).

In considering the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and

needs of the child." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

We find termination of the child's parental rights is in the child's best interests. The father was in federal prison on drug charges and did not expect to be released until 2031. Even after being released, the father would still need to address his mental-health and substance-abuse problems. The juvenile court found the child needed "safety and stability and permanency." We concur in the court's findings. The child should not have to wait for his father to be in a position to care for him.

### V. Exceptions

The father asserts the juvenile court should have placed the child with a relative, S.K., and then applied the exception to termination found in section 232.116(3)(a), which states the court may decide to not terminate a parent's rights if "[a] relative has legal custody of the child." We have determined the juvenile court properly concluded the child should remain in foster care with the child's half-sibling, so the exception in section 232.116(3)(a) does not apply to the facts of this case.

The court considered all of the exceptions in section 232.116(3) and found, "no exception should be applied to prohibit termination in this case." The exceptions in section 232.116(3) "are permissive, not mandatory." *A.S.*, 906 N.W.2d at 475. "We may use our discretion, 'based on the unique circumstances

of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *Id.* (citation omitted). We conclude none of the exceptions to termination should be applied in this case.

We affirm the decision of the juvenile court.

**AFFIRMED.**