# IN THE COURT OF APPEALS OF IOWA

No. 20-0217
Filed June 3, 2020

IN THE INTEREST OF A.C.,
Minor Child,

P.C., Father,
        Appellant.

_____

        Appeal from the Iowa District Court for Story County, Stephen A. Owen, District Associate Judge.

        A father appeals from a permanency order that established a guardianship for his child. **AFFIRMED.**

        Brian T. Bappe of Bappe Law Office, Nevada, for appellant father.

        Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

        Shannon Leighty, Nevada, attorney and guardian ad litem for minor child.

        Considered by Tabor, P.J., and May and Greer, JJ.

**MAY, Judge.**

A father appeals from a permanency order that established a guardianship for his child, A.C.[1]  In July 2019, the Iowa Department of Human Services (DHS) became involved with this family following allegations the father was under the influence of methamphetamine while caring for his children.[2]  A.C. was removed from the father's care and eventually placed with her paternal uncle.  The father stipulated to the adjudication of A.C. as a child in need of assistance.

In January 2020, the juvenile court held a permanency hearing.  Citing the father's failure to complete mental-health and substance-abuse evaluations, as well as numerous missed drug screens, the State recommended establishment of a guardianship of A.C.  For the first time, the father claimed his failure to comply with case requirements had been caused by a lack of transportation.  And the father requested additional time to work toward reunification.

Following the hearing, the juvenile court entered a permanency order transferring guardianship and custody of A.C. to the paternal uncle.  The father appeals.

"Our review of permanency orders is de novo."  *In re A.A.G.*, 708 N.W.2d 85, 90 (Iowa Ct. App. 2005).  "Weight should be given to the juvenile court's findings of fact, but this court is not bound by them."  *In re N.M.*, 528 N.W.2d 94,

---

[1] The mother does not appeal.

[2] A second child is also the subject of child-in-need-of-assistance proceedings. With respect to that child, the juvenile court ordered the State to begin termination-of-parental-rights proceedings.  The father appealed that order in conjunction with this appeal.  But because that order was not a final appealable order, our supreme court treated the father's appeal as an application for interlocutory appeal and denied the application.  So this appeal only addresses the guardianship established for A.C.

96 (Iowa 1995). "Our paramount concern is the child's best interests." *In re A.T.*, 799 N.W.2d 148, 151 (Iowa Ct. App. 2011). The burden of proof in a permanency hearing is by convincing evidence. *See* Iowa Code § 232.104(4) (2019); *accord In re A.J.*, No. 13-0023, 2013 WL 541898, at *1 (Iowa Ct. App. Feb. 13, 2013) (noting the burden of proof is "by convincing evidence, not by clear and convincing evidence").

The father brings two claims on appeal. First, he claims DHS did not make reasonable efforts toward reunification. The father points to his transportation woes as the basis for his lack of progress during this case. But he does not specifically claim DHS was remiss in not providing him transportation. Nor could he. At the September 2019 dispositional hearing, the father was given an opportunity to request additional services. But he did not request any. And at the same hearing, a DHS worker testified she believed the father received transportation assistance from an acquaintance. The father did not suggest otherwise.

While DHS must make reasonable efforts toward reunification, "the parent[] bear[s] an equal obligation to demand other, different, or additional services *before* a permanency . . . hearing."[3] *In re A.O.*, No. 11-1937, 2012 WL 300406, at *2 (Iowa Ct. App. Feb. 1, 2012) (emphasis added). Here, the father admitted at the

---

[3] We recognize requests for different or additional services must be made to the juvenile court, not just to DHS. *See In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002) ("A dialogue between the parent and DHS may help the parties comply with the case permanency plan. If, however, a parent is not satisfied with DHS'[s] response to a request for other services, the parent must come to the court and present this challenge."); *In re O.T.*, No. 18-0837, 2018 WL 3302167, at *2 (Iowa Ct. App. July 5, 2018) ("The failure to request different or additional . . . services in the juvenile court precludes [the parent's] challenge to the services on appeal.").

permanency hearing that he never asked for transportation assistance. And to the extent he made that request at the permanency hearing, it was too late. *See id.* (noting a parent must demand "additional services *before* a permanency . . . hearing" (emphasis added)). This issue is not preserved for our review. *See A.A.G.*, 708 N.W.2d at 91.

Second, the father claims a guardianship is not in A.C.'s best interest. Instead, he "believes an additional six months of working toward reunification is in [A.C.]'s best interest[]." But he does not say why.

Following a permanency hearing, the court may enter an order "transfer[ring] guardianship and custody of the child to a suitable person." Iowa Code § 232.104(2)(d)(1). "Ordinarily, this option is not preferred over the termination of parental rights. But the best interest[] of a child may warrant exercise of the option." *In re J.R.*, No. 18-1922, 2019 WL 719054, at *2 (Iowa Ct. App. Feb. 20, 2019) (internal citation omitted).

The father has made little to no progress in this case. He completed just one of twelve requested drug screens. And so we presume the eleven missed tests would have been positive. *See, e.g.*, *In re I.J.*, No. 20-0036, 2020 WL 1550702, at *2 (Iowa Ct. App. Apr. 1, 2020); *In re C.W.*, No. 14-1501, 2014 WL 5865351, at *2 (Iowa Ct. App. Nov. 13, 2014) ("She has missed several drug screens, which are thus presumed 'dirty,' i.e., they would have been positive for illegal substances."). And while the one completed test came back negative, the father had roughly one-week notice of the test so he could plan his consumption accordingly.

We understand A.C. expressed a desire to return to the father's care—but A.C. conditioned that desire on her father getting "better." Unfortunately, we do not believe the father is "better" or getting there. But A.C. "has done extremely well with her paternal uncle" according to a DHS report. Her school attendance has improved, and she is now on the honor roll. A guardianship provides A.C. stability while also allowing her to have a relationship with her father under her uncle's care and supervision. Conversely, if the father was given additional time to work toward reunification, A.C.'s future would remain uncertain and unstable with little prospect of successful reunification. That is not in her best interest.

Following our de novo review, we conclude establishment of a guardianship is in A.C.'s best interest. *See In re B.T.*, 894 N.W.2d 29, 34–35 (Iowa Ct. App. 2017) (finding establishment of a guardianship to be in the child's best interest when the child was close to the parent but could not be returned to the parent's care).

**AFFIRMED.**