In the Interest of E.G., Minor Child,

State of Iowa, Appellant.

No. 07–1718.

Court of Appeals of Iowa.

Dec. 28, 2007.

Thomas J. Miller, Attorney General, Charles Phillips, Assistant Attorney General, Michael Walton, Acting County Attorney, and Gerda Lane, Assistant County Attorney, for appellant State.

Barbara Maness, Davenport, for intervenor.

Angela Fritz Reyes, Davenport, for minor child.

Considered by VOGEL, P.J., and MAHAN and ZIMMER, JJ.

MAHAN, J.

The State appeals a district court ruling terminating the Iowa Department of Human Services' (Department) guardianship of the child, granting guardianship to the guardian ad litem, and placing custody with the foster mother. We reverse and remand to the juvenile court with directions.

## I. Background Facts and Proceedings

This is the State's second appeal arising out of the post-termination phase of this juvenile case. The subject of this case is a three-year-old boy with achondroplasia dwarfism who has been in the foster home of Susan since March 2005. We incorporate the facts, as set out in our previous opinion in this case, in *In re E.G.*, 738 N.W.2d 653 (Iowa Ct.App.2007). We further add the following facts.

In the State's first appeal, we found that the juvenile court did not abuse its discretion in granting Susan's motion to intervene. *In re E.G.*, 738 N.W.2d 653 (Iowa Ct.App.2007). However, we affirmed the guardianship of the Department, reversed the juvenile court's order placing custody of Elijah with Susan, and vacated the adoption order because no petition for adoption had been filed. *Id.* We found the juvenile court's order for adoptive placement with Susan invaded the right of the Department, as guardian, to consent to Elijah's adoption. Specifically, we stated that:

> The State argues strongly that, under these circumstances, the juvenile court does not have authority to direct the specific adoptive home for the child. In *In re C.D.P.*, 315 N.W.2d 731, 733 (Iowa 1982), the supreme court held that in delinquency dispositions, the juvenile court picks the *type* of placement for the delinquent child but not the specific institution. That decision is left to the child's custodian. *C.P.D.*, 315 N.W.2d at 733. The court determined that when the legislature gave the juvenile court the authority to specify the child's best interests, it granted authority to the juvenile court to direct the *type* of placement the Department was to make, but did not empower the juvenile court to direct a *specific* placement, though the court had the power to monitor the placement. *Id.*
>
> The evidence shows the Department was responsibly discharging its duties as guardian. It found an adoptive home for Elijah that the juvenile court found to be "highly qualified," a finding with which we agree. We affirm the guardianship of the Department and reverse the juvenile court's order placing the child with Susan.

*Id.* The supreme court denied further review of the case on August 3, 2007.

On August 16, 2007, Susan petitioned the juvenile court for guardianship and custody of Elijah and asked for concurrent jurisdiction in district court to be approved to provide for a petition for adoption to be filed by Susan. The petition included a "Notice of Rights of Proposed Ward and Notice of Guardianship Powers." The State then filed a motion to dismiss for lack of jurisdiction, contending Susan's petition for guardianship and notice were apparently made under Iowa Code chapter 633—the probate code. The State claimed subject-matter jurisdiction did not lie in probate-code guardianship and that we had clearly affirmed the guardianship of the Department in our first opinion. On September 17, 2007, the guardian ad litem moved to have guardianship transferred from the Department pursuant to Iowa Code section 232.118(1) (2007). In her motion, the guardian ad litem states that Elijah:

> needs permanency and the most expeditious way to achieve that goal is to remove the Department as Guardian for the child and appoint either this GAL or the foster mother as the Guardian, so that the adoption of this child can take place.

The motion alleged that this action was consistent with the juvenile court's previous finding that adoption by Susan was in

Elijah's best interests and that it was further consistent with our opinion because there was now a petition for adoption on file.[1] The juvenile court granted both motions and awarded guardianship of the child to the guardian ad litem and custody to Susan, finding Elijah's best interests demand permanent placement with Susan. The State now appeals.

Some background facts regarding Susan's care and the Department's efforts toward finding an adoptive placement for Elijah are necessary for a complete understanding of the issues facing our court in this case.

The record shows Susan has provided a more than adequate foster home for Elijah. Susan is a forty-nine year-old single mother who is currently unemployed. She relies on state benefits to support her family. After she was laid off from her job, she chose to stay at home with her children. Susan plans to return to work when Elijah begins preschool. The record shows Susan has asthma and is a smoker, but otherwise establishes that her health is good. Susan has an adult daughter in college and adopted a six year-old African–American child six years ago with behavioral and learning disorders. All the children are thriving in her home. Susan has ensured Elijah has had the appropriate medical care and has spent the time required to help him develop normally. Elijah is well bonded with Susan and her family, including extended family and the social community. There is no indication Susan is not a good caretaker for Elijah.

The Department selected the adoptive California family with which they seek to place Elijah after reviewing five potential adoptive homes. Its selection was made with the assistance of the Little People of America Adoption Program to select a home that could meet Elijah's special needs. Extensive specialized medical services to treat achondroplasia dwarfism are concentrated near this California home. In addition, the potential adoptive family has had personal experiences with achondroplasia dwarfism and is financially stable. There is no indication this home would not be an excellent adoptive home for Elijah.

## II. Standard of Review

 Our review of this juvenile case is de novo. *See In re K.C.,* 660 N.W.2d 29, 32 (Iowa 2003) (permanency order); *In re J.M.W.,* 492 N.W.2d 686, 689 (Iowa 1992) (adoption dispute); *In re Adoption of Moriarty,* 260 Iowa 1279, 1285, 152 N.W.2d 218, 221 (1967) (adoption-related equitable proceeding). We review both the facts and the law and adjudicate rights anew. *In re H.G.,* 601 N.W.2d 84, 85 (Iowa 1999). Although we give weight to the juvenile court's findings of fact, we are not bound by them. *In re N.M.,* 528 N.W.2d 94, 96 (Iowa 1995).

## III. Merits

### A. Motion to Intervene

The record is clear the Department conducted a very thorough search process in seeking an adoptive home for Elijah. By mid-February 2006 the Department had conducted an interview with the prospective adoptive family, and the guardian ad litem was invited to participate in this interview. The guardian ad litem declined this invitation but agreed with the selection of the prospective adoptive family. Susan neither sought to intervene nor asked to be considered as a prospective

---

1. Susan filed only a petition for guardianship and custody, which further asked that the juvenile court approve concurrent jurisdiction in the district court to provide for a petition for adoption to be filed by Susan.

placement during this time. Although she did file a motion to intervene in July 2006, it is clear that most of the pre-adoption study had been completed by that time.

### B. Permanency Review Order

■ The juvenile court terminated the guardianship of the Department following a permanency review hearing. This action was not based upon any proof of unreasonable actions on the part of the Department. Indeed, the Department conducted an extensive adoption work-up, which resulted in finding a "highly qualified" adoption home.

In addition, the permanency review order was not consistent with the court of appeals opinion previously issued. Instead, the permanency review order stated that "[t]he Court determines that maintaining the child in the guardianship of the Department of Human Services is unnecessary and inappropriate in this circumstance because the Court has already determined the most appropriate placement of the child...." In our previous opinion we stated that

> when the legislature gave the juvenile court the authority to specify the child's best interests, it granted authority to the juvenile court to direct the *type* of placement the Department was to make, but did not empower the juvenile court to direct a specific placement, though the court had the power to monitor the placement.

*In re E.G.*, 738 N.W.2d 653 (Iowa Ct.App. 2007). On remand, by placing custody of the child with Susan, the district court invaded the duty and right of the guardian to choose a specific placement for Elijah. We find the juvenile court erred in terminating the Department's guardianship of Elijah.

The district court's finding was based on its belief that adoption of Elijah by Susan was in Elijah's best interests. However, in this case, there is not only one, but two, situations that would be in Elijah's best interests. While Susan has done a wonderful job of raising Elijah to this point and there is no evidence that she would not continue to do so, it also appears that the adoptive home chosen by the Department would also serve Elijah's best interests.

The foster care system is designed to provide temporary, not permanent, homes for children. This is to facilitate the goals of reunification with the parents or placement in a relative's home. We certainly recognize the bond that is developed between a foster parent and child. We also recognize that a bond between the foster parents and the child signifies a good foster home. However, if every foster parent who formed a bond with a child were given enforceable rights to the children, it would upset the goals of the system. The legitimate permanency goals of the guardian, the Department in this case, cannot be disrupted merely because a foster mother decided, at the last hour, that she wished to adopt the child.

Susan was aware of the Department's efforts to find adoptive placement. She failed to intervene or otherwise express her desire to adopt Elijah until after the Department had made significant investments in locating an appropriate adoptive home for Elijah. There is no evidence the Department in any way failed in its guardianship duties or in looking out for Elijah's best interests. The permanency review order is reversed and remanded to juvenile court with directions to reinstate guardianship of Elijah with the Department.

**REVERSED AND REMANDED WITH DIRECTIONS.**