# IN THE COURT OF APPEALS OF IOWA

No. 20-0580
Filed October 7, 2020

**IN THE INTEREST OF Z.D.,**
**Minor Child,**

**J.M. and J.M., Intervenors,**
    Appellants,

**STATE OF IOWA,**
    Appellant.

_____

Appeal from the Iowa District Court for Clinton County, Phillip J. Tabor, District Associate Judge.

The State and intervenors appeal the juvenile court order removing the Iowa Department of Human Services as the guardian of a minor child. **REVERSED AND REMANDED.**

T.J. Hier of Hier Law Office, P.C., Baxter, for appellant intervenors (relatives).

Thomas J. Miller, Attorney General, and Charles K. Phillips, Assistant Attorney General, for appellant State.

Victoria D. Noel of The Noel Law Firm, P.C., Clinton, for appellee intervenors (foster parents).

Marsha Arnold, Davenport, attorney and guardian ad litem for minor child.

Considered by Mullins, P.J., Schumacher, J., and Blane, S.J.* Tabor, J., takes no part.

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**SCHUMACHER, Judge.**

The State and intervenors appeal the juvenile court order removing the Iowa Department of Human Services (DHS) as the guardian of a minor child. We find the intervenors did not preserve error on their due process claims. We also find the foster parents did not show DHS acted unreasonably or irresponsibly, or that removing DHS as the guardian was in the child's best interests. As such, we reverse the decision of the juvenile court and remand for further proceedings.

## I.    Background Facts & Proceedings

Z.D. was born in 2019. The mother indicated she was unable to care for the child and wanted to have the child placed for adoption.[1]  On March 27, 2019, the child was adjudicated to be in need of assistance (CINA).[2]  The child was placed in the temporary custody of DHS for placement in foster care. DHS placed the child with E.D. and L.D. (foster parents).

The child's great-uncle, J.M., and his wife, J.M., (together referred to as the great-uncle) received notice of the CINA proceedings on April 1. The great-uncle approached DHS on April 4 or 5 and requested Z.D. be placed with him. The great-uncle previously adopted Z.D.'s half-sibling, M.M., and stated he wanted the two siblings to be raised together. Additionally, the great-uncle's sister adopted another of Z.D.'s siblings, D.J., and the families had frequent contact.

---

[1] The mother tested positive for amphetamines at the time of the child's birth, and the child tested positive for methamphetamine and amphetamines. A report filed in the termination suggests that the mother intended to place the baby for adoption under the Safe Haven law; however, a misunderstanding at the hospital may have prevented such from occurring.

[2] Separate adjudication and dispositional orders were filed for the father, as his whereabouts were unknown. He was served by publication.

On July 30, the great-uncle filed a motion to intervene. A home study showed the great-uncle was an appropriate placement option for the child. The great-uncle asked to have Z.D. placed in his care and stated he was interested in adopting the child. The great-uncle had some visits with the child and asked for increased, consistent visitation.

The court granted the motion to intervene on August 8. The court noted DHS had known since shortly after the child was born that there was a relative with a sibling of the child, and there should have been consideration of the great-uncle as a potential placement for the child. The court found, "It is clear that [DHS] has not made reasonable efforts in this case and that the placement of this child needs to be addressed as soon as possible for the best interest of the child." Thereafter, the foster parents were permitted to intervene in the case.

On September 3, the State filed a petition for termination of parental rights (TPR). On the same day, the State filed a motion for a continuance on the issue of permanency. The great-uncle resisted the motion to continue and sought to modify the placement of the child. He asserted that it would be in the child's best interests to be placed with a sibling. DHS requested separate representation by the attorney general, and an assistant attorney general thereafter represented DHS.[3] The foster parents joined in the motion to continue. On September 18, the juvenile court determined it was in the child's best interests for the hearing to be continued and for the child to remain with the foster parents.

---

[3] The county attorney and DHS had divergent interests. The county attorney filed a brief asking for the removal of DHS as the child's guardian.

On September 23, the great-uncle filed a new motion requesting the child be placed in his care prior to the TPR hearing. He also asked for a continuance of the TPR hearing until the issue of permanency for the child had been established. He stated DHS had not engaged in reasonable efforts to have the child placed with a relative. The mother joined in the motion, stating she wanted the child to be placed with the great-uncle. The juvenile court scheduled a permanency hearing on October 28, with the TPR hearing set for November 19.

There was a two-hour hearing on permanency on October 28. The remainder of the hearing was continued until December 2. In the meantime, a TPR hearing was held on November 19. The juvenile court terminated the parents' rights and "ORDERED that the child is placed in the custody and guardianship of [DHS] for placement in an appropriate pre-adoptive placement."[4]

At the continued hearing on December 2, the parties informed the court that rather than continue with the permanency hearing, they were going to wait for a decision by the adoption selection committee. The attorney for the great-uncle stated there was discussion about "getting some visitation set up with the [great-uncle] that they can count on," and "facilitating communication" about the child. The attorney for the foster parents agreed, stating:

> We are go[ing to] set up a meeting to make sure that there's consistent visitation and that's being facilitated to ensure that the Department is doing reasonable efforts, because obviously that is important, and my clients are supportive of that. And then, as [the great-uncle's attorney] said, after the adoption selection staffing occurs, if either of the parties desires a remedy, we believe that would be the appropriate time to do it rather than now.

---

[4] Neither parent appealed the termination order. Neither parent is a party to this appeal.

The guardian ad litem stated, "I also agree with what has been said." The court entered an order stating the great-uncle's motion was withdrawn.

On February 27, 2020, the foster parents filed an application to remove DHS as the guardian for the child. The foster parents stated DHS was acting unreasonably because it was taking too long to reach a decision on adoption. They also stated that as there was increased visitation with the great-uncle, the child "exhibited signs of separation anxiety and trauma."[5]

The application to remove DHS as the guardian was set for a three-hour hearing on March 19. The Iowa Supreme Court issued In the Matter of Ongoing Provisions For Coronavirus/COVID-19 Impact On Court Services (March 17, 2020), which stated, "Non-delinquency juvenile matters set to commence before May 4 shall be either continued to a date no earlier than May 4 or conducted with the parties and/or participants appearing remotely using video or phone conferencing, at the discretion of the court."

On March 18, the court canceled the hearing scheduled for the next day and directed the parties to "file written briefs/statements outlining their position in this matter" by March 25. The county attorney and the foster parents filed written briefs to support removal of DHS as the child's guardian. The guardian ad litem joined in these briefs. DHS and the great-uncle filed written briefs in resistance to the motion.

---

[5] As discussed below, no evidence was presented on the application to remove DHS as the guardian, so the foster parents' concerns about visitation are not supported by testimony or exhibits. The foster parents submitted affidavits to support their position, but the juvenile court stated it would not consider them.

The juvenile court issued a decision on March 27. The court found "the situation with [Z.D.] only knowing the [foster parents] as his family and [DHS] not investigating placement with the [great-uncle] was unreasonable conduct by [DHS] in performing its obligations in this matter and that [DHS's] conduct caused the guardianship issue faced by the Court at this time." The court stated DHS consistently indicated the child would be adopted by the foster parents until after the termination, when it began to have the child spend more time with the great-uncle. The court determined, "The actions of [DHS] throughout this case have been unreasonable and have not met the responsibilities of [DHS] to [Z.D.], to the foster parents, or to the relative placement options." The court found DHS should be removed as the guardian for the child. The court named the foster parents as the child's guardian. DHS and the great-uncle now appeal.

## II. Standard of Review

"We review actions seeking to remove DHS as guardian and challenging custody placement de novo." *In re D.H.*, No. 12-1387, 2012 WL 5954633, at *2 (Iowa Ct. App. Nov. 29, 2012) (citing *In re E.G.*, 738 N.W.2d 653, 654 (Iowa Ct. App. 2007)). "We review both the facts and the law and adjudicate rights anew." *Id.* "Although we give weight to the juvenile court's findings of fact, we are not bound by them." *Id.*

## III. Due Process

The great-uncle contends he was denied due process because the juvenile court ruled the parties could not present testimony or submit exhibits at a hearing on the motion to remove DHS as the child's guardian.

Prior to the hearing scheduled for March 19, 2020, the great-uncle filed a motion requesting a continuance or for the hearing to be held by video or telephone, in accordance with the supreme court's order filed on March 17. The foster parents resisted the motion, stating time was of the essence, and the court could "determine which, if any parties, may participate via videoconference or telephone." The great-uncle responded by again pointing out the supreme court's guidelines. However, the court determined the issue would be decided based only on the previous record in the case and the parties' briefs.

The great-uncle filed a motion to reconsider the court's ruling, but it referred solely to the court's decision to require the child, who was on an extended visit with the great-uncle, to be immediately returned to the foster parents. The motion to reconsider did not refer to the court's decision to exclude testimony and new exhibits. Also, the issue was not raised in the great-uncle's brief. The great-uncle did not file any motions after the court's ruling but filed a notice of appeal.

"[T]he general rule that appellate arguments must first be raised in the trial court applies to CINA and [TPR] cases." *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). This rule applies even to "issues implicating constitutional rights," such as due process. *In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003). The issue concerning due process was not raised before the juvenile court and was not ruled on by the court. We conclude this issue has not been preserved for our review. *See In re Z.P.*, ___ N.W.2d ___, ___, 2020 WL 5268435, at *3 (Iowa 2020) (noting an issue that "was not disputed below" "is therefore not preserved for appeal").

#### IV.     Removal of Guardian

DHS and the great-uncle claim the juvenile court improperly removed DHS as the child's guardian. We first note that on December 2, 2019, the foster parents stated that if either of the parties wanted to challenge the adoption selection committee's decision, that would take place "after the adoption selection staffing occurs." The guardian ad litem agreed as well. The great-uncle's attorney also stated the case "needs to get in front of the adoption selection committee so this child can move forward with adoption. Whether it ends up being the [foster parents] or whether it ends up being the [great-uncle], they can go through that process." The attorney stated any challenges would be made after the adoption selection committee's decision.

Although the foster parents agreed on the record to let the adoption selection process play out, less than three months later, on February 27, 2020, they filed an application to remove DHS as the guardian for the child. The foster parents stated DHS was acting unreasonably because it was taking too long to reach a decision on adoption. The foster parents sought to bypass the DHS adoption selection committee by having DHS removed as the child's guardian before the committee met and made a decision.[6]

"When DHS is a child's guardian, it determines the specific adoptive home for the child." *In re J.H.*, No. 20-0081, 2020 WL 2988758, at *3 (Iowa Ct. App. June 3, 2020) (quoting *In re T.J.M.*, No. 18-1390, 2018 WL 5840806, at *3 (Iowa

---

[6] The adoption selection committee met on March 16, 2020. According to the great-uncle's brief, he was informed by DHS that he had been chosen by the committee to adopt the child.

Ct. App. Nov. 7, 2018)); *see also In re S.O.*, No. 13-0740, 2013 WL 3458216, at *2 (Iowa Ct. App. July 10, 2013) ("It is DHS's duty and right, however, to choose the placement for these children."). DHS follows a selection process and criteria set out in the Iowa Administrative Code. *J.H.*, 2020 WL 2988758, at *3 (citing Iowa Admin. Code r. 441-200.4(3)). We find it is not unreasonable or irresponsible for DHS to be following this process. Although the foster parents and the juvenile court may have wished the process could be accomplished more expeditiously, we do not find the process was taking an undue amount of time.[7]

Iowa Code section 232.118(1) (2020) provides for the removal of a guardian in juvenile court proceedings. We have stated:

> In considering whether DHS should be removed as the guardian of a child, we have looked at whether it has engaged in "unreasonable actions." [*In re E.G.*, 745 N.W.2d 742, 744 (Iowa Ct. App. 2007)]. We have also looked at whether "the Department in any way failed in its guardianship duties or in looking out for [the child's] best interests." *Id.*; *accord* [*S.O.*, 2013 WL 3458216, at *2] ("The juvenile court retains the authority to remove DHS as guardian if the department acts unreasonably or irresponsibly in discharging its duties."). The actions of DHS "must serve the best interests of the child." *In re N.V.*, 877 N.W.2d 146, 153 (Iowa Ct. App. 2016); *accord In re C.L.C.*, 479 N.W.2d 340, 345 (Iowa Ct. App. 1991) (noting "the overall principle of chapter 232 [is] to seek the best interests of the child").

*T.J.M.*, 2018 WL 5840806, at *3. Thus, we consider whether (1) "DHS acted unreasonably or irresponsibly in discharging its duties" and (2) removal of DHS as the guardian is in the child's best interests. *J.H.*, 2020 WL 2988758, at *3.

Factually, this case is very similar to *I.P.*, where foster parents filed a motion to remove DHS as the guardian of a child after DHS decided to transition the child

---

[7] Some of the delay in this case was caused by the motions for continuance that were filed throughout the case and granted by the court.

to a family who had adopted the child's half-sibling.[8]  2019 WL 3317922, at *2. "[T]he [juvenile] court found DHS acted unreasonably in failing to timely contact [the child's] relatives."  *Id.*  Despite this, the court concluded removing DHS as the guardian was not the appropriate remedy.  *Id.*  On appeal, we stated, "[P]roviding a good foster home does not create a legal ground to remove the DHS as guardian after termination.  We concluded DHS acted in the child's best interests by placing the child with a half-sibling.  *Id.*

Also, in *T.J.M.*, a great-uncle sought to remove DHS as the guardian when DHS chose to place a child with a maternal aunt who had adopted the child's half-sibling.  2018 WL 5840806, at *2.  The juvenile court determined DHS should be removed as the child's guardian because the great-uncle had been led to believe the child would be placed in his care.  *Id.*  The court found DHS failed to have continuity in decision-making.  *Id.*  We reversed the juvenile court's decision, finding DHS was required "to make a reasonable effort to place the child and siblings together in the same placement."  *Id.* at *4 (quoting Iowa Code § 232.108(1)).  Additionally, DHS had a lengthy statement giving its reasons for placing the child with the maternal aunt, where the child's half-sibling was living.

---

[8]  There are several cases where a party asked to have DHS removed as the guardian of a child, the juvenile court denied the request on the ground DHS had not acted unreasonably or failed to act in the child's best interests, and the issue was affirmed on appeal.  *See In re I.P.*, No. 19-0715, 2019 WL 3317922, at *5 (Iowa Ct. App. July 24, 2019); *In re W.L.*, No. 19-0424, 2019 WL 2375248, at *4 (Iowa Ct. App. June 5, 2019); *In re X.O.*, No. 16-0313, 2016 WL 2743445, at *5 (Iowa Ct. App. May 11, 2016); *In re R.S.*, No. 15-1244, 2015 WL 5578273, at *3 (Iowa Ct. App. Sept. 23, 2015); *S.O.*, 2013 WL 3458216, at *2; *D.H.*, 2012 WL 5954633, at *4; *In re K.M.H.*, No. 12-1300, 2012 WL 5562784, at *3 (Iowa Ct. App. Nov. 15, 2012); *In re D.H.*, No. 10-1313, 2010 WL 4484849, at *7 (Iowa Ct. App. Nov. 10, 2010).

*Id.* at *5. We concluded, "In our de novo review of the facts and the law, we conclude DHS did not act unreasonably, irresponsibly, or contrary to the best interests of [the child] when it determined the child should be permanently placed in the home of the maternal aunt." *Id.*

In a recent case, *J.H.*, although the adoption selection committee chose foster parents who had adopted a child's half-sibling, a supervisor overruled the committee and determined the child should be placed with the child's grandfather. 2020 WL 29887758, at *1–2. The foster parents sought to remove DHS as the child's guardian. *Id.* at *2. We affirmed the juvenile court's decision removing DHS as the child's guardian, finding DHS acted unreasonably because it did not follow its own procedures for the permanent placement of children. *Id.* at *5. We also concluded DHS had not acted in the child's best interests, noting that generally DHS has a preference to keep siblings together. *Id.* at *6.

We acknowledge that separation between a child and foster parents may be painful. Z.D.'s foster parents have provided his shelter and care since Z.D. was a newborn. He was just over a year old at the time of the hearing held on the motion to remove DHS as his guardian. However, our supreme court has previously held, "The foster care system is designed to provide temporary, not permanent, homes for children." *E.G.*, 745 N.W.2d at 744. DHS is not required to make "reasonable efforts to preserve a pre-adoptive foster care placement." *R.S.*, 2015 WL 5578273, at *1. We do not find DHS acted unreasonably or irresponsibly by having the child live with foster parents for a period of time but then explore other options when considering the best placement for adoption. *See I.P.*, 2019 WL 3317922, at *5 ("[P]roviding a good foster home does not create a legal ground

to remove the DHS as guardian after termination."); *T.J.M.*, 2018 WL 5840806, at *5 (finding DHS did not act unreasonably by failing to give deference to one relative because the child previously had been placed in his care). As has been stated before:

> In terms of the court's involvement in ruling on the application to remove the DHS, this is not a custody battle between the two competing parties. The juvenile court is not permitted to make its own independent decision as to which family the child should be placed with for adoption. That duty lies with the DHS, as the guardian of the child. In *E.G. I*, we held that "[t]he legislature, while giving the juvenile court continuing oversight consistent with the best interest of the child, did not give the juvenile court the right to establish custody or consent to adoption." 738 N.W.2d at 657. "Rather, these rights were specifically granted to the guardian," which is the DHS in this case. *Id.* The appointed guardian, not the juvenile court, is responsible for making important decisions that have a permanent effect on the life and development of the child and promoting the general welfare of the child.

*J.H.*, 2020 WL 2988758, at *9–10 (Ahlers, J., specially concurring).

Even if we were to find DHS acted unreasonably, we do not find DHS failed to act in the child's best interests or that removal of DHS as the child's guardian would be in the child's best interests. We have stated:

> Iowa Code section 232.108(1) "requires the department to 'make a reasonable effort to place the child and siblings together in the same placement.'" *In re J.B.*, No. 18-1177, 2018 WL 4362753, at *2 (Iowa Ct. App. Sept. 12, 2018) (quoting Iowa Code § 232.108(1)). "[T]he importance of sibling relationships has been statutorily recognized in section 232.108." *In re M.D.*, No. 17-1893, 2018 WL 739351, at *2 (Iowa Ct. App. Feb. 7, 2018). "[T]he overall thrust of section 232.108 [is] to maintain sibling relationships absent clear and convincing evidence it would be detrimental." *In re A.J.*, No. 13-0216, 2013 WL 1227360, at *3 (Iowa Ct. App. Mar. 27, 2013).

*T.J.M.*, 2018 WL 5840806, at *4.

Based on the statutory requirements of section 232.108(1), DHS was required to "make a reasonable effort" to place the child in a home with a sibling,

which in this case was the home of the great-uncle. The great-uncle had adopted Z.D.'s half-sibling, M.M., and had frequent contact with another half-sibling, D.J., who had been adopted by the great-uncle's sister. It was not contrary to Z.D.'s best interests for DHS to consider placing the child with the great-uncle or increase visitation with the great-uncle so an assessment could be made as to whether his home was the best placement for the child.

We reverse the juvenile court's decision removing DHS as the child's guardian and remand for further proceedings.

**REVERSED AND REMANDED.**