# IN THE COURT OF APPEALS OF IOWA

No. 24-0092
Filed April 10, 2024

**IN THE INTEREST OF M.A. and M.A.,**
**Minor Children,**

**F.F., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Fayette County, Linnea M.N. Nicol, Judge.

A mother appeals the juvenile court's dispositional review order and finding of reasonable efforts. **AFFIRMED.**

Kristin R. Schiller Herman, Calmar, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Sarah Dooley Rothman of Rothman Law Office, Independence, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Greer and Chicchelly, JJ.

**BOWER, Chief Judge.**

In this child-in-need-of-assistance proceeding, the mother appeals the juvenile court's dispositional review order and finding of reasonable efforts. Upon review, we affirm.

## I.      *Background Facts and Proceedings*

This family has been involved in department-of-health-and-human-services investigations and the juvenile court for years, which has included child abuse assessments founded due to dangerous substances, presence of illegal drugs, and denial of critical care. The parents also have histories of criminal activity, primarily relating to drug use.

The mother and father divorced in 2017, pursuant to a stipulated decree, agreeing to shared physical care of their three children: M.A., born in 2006; O.A., born in 2007; and M.A., born in 2010. In 2019, the district court modified the dissolution decree, placing physical care of the children with the father due to the department's involvement. Thereafter, the father moved with the children to Nebraska without input from the mother, limiting the mother's contact with the children. In response, the mother filed a petition to modify the decree, requesting physical care of the children.

In late 2021, the district court entered a modification order, placing physical care of the children with the mother in Iowa, noting the father's "actions in alienating his children from [the mother] is detrimental to their best interest" and finding "[b]ecause [the mother] will encourage a relationship between the children and their father and [he] refuses to do so, she has the ability to provide superior care." The parents' daughters, M.A. and M.A., moved back to Iowa to live with the mother.

Apparently, O.A. refused to move to Iowa and was allowed to stay in Nebraska with the father.[1]

In February 2023, the family again came to the department's attention upon reports of methamphetamine use in the home by the mother and other adults. M.A. and M.A. reported being aware the mother was "using drugs again," and stated they were "responsible" for caring for their younger half-siblings, B.F., born in 2019, and H.H., born in 2022.[2] B.F. and H.H. tested positive for methamphetamine. The children were removed from the mother's custody, placed with the paternal grandmother,[3] and adjudicated in need of assistance (CINA).[4] The father requested custody of M.A. and M.A., and a home study of the father's home was initiated.

The mother began inpatient substance-use treatment in May. Although the children were allowed to live with her at the treatment facility, M.A. and M.A. were allowed to remain with their grandmother, per their request. The guardian ad litem also opined the M.A. and M.A. should not be placed with the mother at treatment, "agree[ing] that it is in their best interests to not switch schools for a third time in less than a year." The guardian ad litem further opined the mother's contact with them "should be supervised until she demonstrates an ability to have appropriate contact with them." The guardian ad litem reported the mother's contacts with the children "have been consistently aimed at denying her responsibility for the

---

[1] O.A. has remained in the father's care. He is not part of these proceedings.
[2] B.F. and H.H. are not at issue in these proceedings.
[3] B.F. and H.H. were later moved to a different placement.
[4] M.A. and M.A. were adjudicated CINA pursuant to Iowa Code section 232.96(3)(b) (2023).

situation, blaming the teens for the situation that she created, and have not shown an ability to have a positive relationship with them."

The children repeatedly expressed "their desire to live with the[] father in Nebraska." The department authored a dispositional report in May, noting the children were "looking forward to being able to move back to live with their dad in Nebraska when the home study is finalized."[5] The department and guardian ad litem recommended the children's placement with the father.

A dispositional hearing began in June and was reset to July to allow for additional time. After the first part of the hearing, however, the court authorized the department "to facilitate an extended visit of the children with the[] father in Nebraska." The court further ordered, "The current services shall continue with the addition of counseling for [the older child]."

The court entered a dispositional order in August. The court observed the children, who were thirteen- and seventeen-years-old, were "adamant that they wish to be placed in the home of their father" and "return to what they consider their 'home' school district in Nebraska." The court noted the children's relationship with the mother was "strained" and ordered "[c]ounseling [to] be provided to improve the relationship between the mother and [the children]." The court further noted the mother had not "requested additional or more intensive services." The court transferred custody of the children to the father, and the children "officially moved" to Nebraska at the end of August. The mother did not appeal that order.

---

[5] By that time, the father's home study had been conditionally approved. It was formally approved in June.

In October, the mother filed a motion for reasonable efforts, claiming the department's "reunification services are not sufficient." Specifically, the mother challenged her lack of visitation with the children and the lack of family counseling as well as individual counseling for the children. The mother also requested a "refrigerator list" be provided "so that she knows what the expectations are for her to resume custody of the children."

The mother's motion came before the court at a review hearing less than one week later. After receiving a number of exhibits and hearing the parties' arguments, the court entered a dispositional review order and denied the motion. The mother appeals.[6]

## II.      Standard of Review

We review decisions in CINA proceedings de novo. *In re L.H.*, 904 N.W.2d 145, 149 (Iowa 2017). We are not bound by the factual findings of the court, but we give weight to those findings. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). The court's "determinations must be based upon clear and convincing evidence." *Id.* at 41. Our primary consideration is the best interests of the children. *In re D.S.*, 563 N.W.2d 12, 14 (Iowa Ct. App. 1997).

---

[6] The State argues the mother's claims relating to the older M.A. are "moot as the child has attained the age of majority." Indeed, "[a] child in a child in need of assistance proceeding is defined as a person under eighteen years of age." *In re H.G.*, 601 N.W.2d 84, 85 (Iowa 1999). Accordingly, "age . . . help[s] define the jurisdiction of the juvenile court in a child in need of assistance proceeding." *Id.* at 86. In determining this jurisdiction, "the age . . . of the child at the time the proceeding is initiated is controlling." Iowa Code § 232.61(2). "[O]nce a court obtains jurisdiction over a person and the subject matter of a case, it retains jurisdiction until a final disposition has been made." *In re K.N.*, 625 N.W.2d 731, 734 (Iowa 2001) (quoting *H.G.*, 601 N.W.2d at 86). Here, because the court did not "dismiss [M.A.'s] CINA case," *see In re R.P.*, No. 20-1348, 2021 WL 211624, at *1 n.1 (Iowa Ct. App. Jan. 21, 2021), we retain jurisdiction of this appeal.

### III.  Discussion

*A. Transfer of Custody to the Father.*  The mother claims the court "erred when it transferred custody of M.A. and M.A. to the father."  The State contends the mother failed to preserve error on this argument, and we agree.  Normal error-preservation rules apply in CINA cases.  *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012).  Those rules require a party to challenge an order by appeal.  Here, the court entered a dispositional order on August 28, 2023, in which the court ordered, in part: "The least restrictive disposition available in the circumstances, which is in the best interest of the children in interest, is that custody of [M.A. and M.A.] should be transferred to . . . their father, and non-custodial parent subject to visitation with . . . the children's mother . . . ."  The mother did not appeal the dispositional order.  "Therefore, the principles of res judicata bar [her] claim." *In re D.S.*, 563 N.W.2d 12, 15 (Iowa Ct. App. 1997) (recognizing the principles of res judicata bar a parent's claim when the claim arises from a different order than the one the parent appealed); *In re Marriage of Guyer*, 522 N.W.2d 818, 821 (Iowa 1994) ("Principles of res judicata preclude a court from relitigating an issue or claim that has been previously decided."); *In re A.A.*, No. 10-1102, 2010 WL 3503981, at *2 (Iowa Ct. App. Sept. 9, 2010) ("[A]ny error claimed to have been made at the permanency hearing or within the ruling prior to the termination proceeding was not preserved for our review.").

*B. Continued Removal from the Mother's Custody.*  The mother claims she "argued for return of custody at the dispositional review hearing on October 20, 2023" and she also "argued it was in the best interests of the children to be returned to her custody through [her] objections to [the guardian ad litem] report filed on

October 19, 2023." The State contends the mother failed to preserve error on this argument, claiming, "[a]t the disposition review hearing held October 20, 2023, the mother did not argue that the children should no longer be removed from her care." Indeed, the mother's "position" at the dispositional review hearing related to the lack of reasonable efforts being made rather than the continued removal of the children. However, insofar as the mother's "position [was set forth] in the documents" filed by the mother's attorney and provided the mother "believes it is in the best interests of the children to be returned to her custody," we find this issue preserved.

The mother has demonstrated progress by completing inpatient treatment, as well as participating in therapy. However, significant issues remain concerning the mother's ability to have "appropriate contact" with the children and parent the children safely. As the guardian ad litem reported, "The children are happy and healthy in their father's care and no longer required to take a parental role with their younger half-siblings." The younger M.A. submitted a thoughtful and detailed letter to the court, expressing her desire to remain in Nebraska with the father. The children's report cards indicate they are "flourish[ing]," and the older M.A. was making plans for high school graduation and college. The children participated in video visits with the mother and communicated with her via electronic messaging. However, conflict between the mother and the children persisted, which needed to be addressed before their relationships could be repaired. The court found continued removal of the children from the mother's home was in their best interests but also emphasized the need for the children to participate in counseling, stating in part:

The goal in this case is reunification and I hear [M.A. and M.A.], their desire to stay with their father at this time. It was a tough call for me to allow them to be placed so far away from their mother but I heard them. I heard them say that's what they desired, that's where they would be happiest and so I did that, but I did that on the condition that there would be active participation in visitation and that there will be active participation in counseling.

And if the only counseling that can be arranged to be paid for is telehealth, I expect you to try telehealth because the department is obligated to provide reasonable efforts and you are obligated to try telehealth if that's the only counseling we can pay for, and participating in reunification services from the comfort of your own home with your father is the least I expect of you.

I expect you to participate in counseling. I expect you to be telling your counselor the issues that you have with your mom and I expect us to be able to be working on that stuff.

I won't place you in your father's home hours, hours away from where we could be having regular visits weekly and have you not participating in services. I won't have it.

We echo the court's sentiment relating to the children's participating in therapy and making efforts to repair their relationship with the mother. However, upon our review, we affirm the court's dispositional review order finding continued removal from the mother's custody better serves the children's best interests.[7]

*C. Reasonable Efforts.* The mother claims the court erred in denying her motion for lack of reasonable efforts, based on the department's failure to arrange "regular and frequent visitation" and "act[] with more urgency in scheduling individual counseling for M.A. and in scheduling family counseling between the children and the mother."

---

[7] The mother further claims the court "erred when it omitted a finding regarding the best interests of the child-in-interest" in the review order. We disagree. In our review of the court's order and the detailed discussion by the court on the record at the hearing, we conclude the court properly considered and issued a decision in furtherance of the children's best interests.

We first turn to the visitation issue. After the children went to Nebraska, the mother had one visit in July and one visit in August. The next visit was scheduled to take place on September 16, but the mother agreed it had to be rescheduled because the maternal grandmother, who was supervising the visit, was "on vacation." The visit was rescheduled for September 30, but the grandmother cancelled because she "was experiencing a medical emergency." The next visit was scheduled to take place the day of the review hearing. At the hearing, the mother suggested the department find another supervisor for visits and stated the maternal grandmother was unable to supervise the visit. The guardian ad litem stated:

> The family had not notified the department that the family-arranged supervisor was not available. My understanding is that arrangements have now been made for providers to actually supervise and make sure the visit happens, but if there is a supervision issue, the department needs to be notified about it so they can address that to ensure that they are making reasonable efforts.
> I would also note that the visits we are discussing are the in-person visits. There is video contact, telephone contact and as of last night Snapchat contact between the mother and the teenagers, frankly more than they want but that is happening . . . .

In denying the mother's motion for lack of reasonable efforts, the court found, "Due to the distance between the mother's home and the father's home it is difficult to arrange for regular and frequent visitation." We also note visits were difficult to arrange because the children were involved in school and other activities, despite the father making efforts to facilitate visits when possible.[8] We also observe the mother did not take issue with the maternal grandmother

---

[8] The evidence does not support the mother's claim the father "interfered" with her visits.

supervising visits until the eve of the review hearing. *See In re L.M.*, 904 N.W.2d 835, 840 (Iowa 2017) (noting an "objection to the sufficiency of services should be made 'early in the process so appropriate changes can be made'" (citation omitted)). For these reasons, we reject the mother's claim relating to visitation.

Regarding counseling, as soon as the children began living in Nebraska, the father attempted to schedule therapy appointments, but their insurance was denied. He then began working to obtain different insurance for the children. The department noted the father was unable to purchase insurance because he was "still paying child support on all three kids (including [O.A.,] the girls' older brother) and this is causing a financial strain on the family." The father also filed a motion to be relieved of his child-support obligation to the mother. The department noted the mother "has been sent paperwork . . . to fill out and return and she has not done so yet, causing a delay in the stop of child support." The father reported "[a]s soon as the [children] are approved for Medicaid in Nebraska [he] will get them signed up for counseling." At the hearing, the father testified, "I can't afford to put them on my insurance because of the $900 [for child support] is taken out. I can't get it. . . . I have been trying for two months." The father's attorney reported providers in Nebraska were not "willing to take Iowa Medicaid in Nebraska unfortunately."

When the idea of telehealth counseling was brought up to the children, the children believed it would be "pointless." The court was not persuaded by the children's resistance, stating in part: "It sounds like the insurance issue could be solved by doing it telehealth from a provider who will accept the Iowa Title XIX and I expect that to happen." The court also directed the department to have the

children engage in counseling, even if the method was less than ideal. Under these circumstances, we conclude the department made reasonable efforts toward reunification.

We affirm the dispositional review order and finding of reasonable efforts.

**AFFIRMED.**